# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA SLINGERLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 7253 |
| | ) | |
| DAVID L. BIBB, Acting Administrator, | ) | |
| General Services Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant's motion for summary judgment. For the reasons stated below, we grant the motion for summary judgment in its entirety.

## BACKGROUND

Plaintiff Barbara Slingerland ("Slingerland") alleges that she is currently employed by General Services Administration ("GSA"). Slingerland further alleges that on November 5, 1992 she filed a formal complaint with the Equal Employment Opportunity office ("EEO Complaint") complaining that she was being discriminated against in the workplace because of her gender. Slingerland contends that after she

1

made the EEO Complaint, she was denied a promotion to thirteen open positions in retaliation for the filing of the EEO Complaint. Slingerland also claims that she was subjected to a hostile work environment. Slingerland includes in her complaint a claim alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count I), and a Title VII hostile work environment claim (Count II). Defendant moves for summary judgment on both claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or pointing out "an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the movant has met this burden, the nonmoving party cannot simply rest on the allegations in the pleadings, but through "affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial."

2

Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Retaliation Claim (Count I)

Defendant argues that Slingerland failed to exhaust her administrative remedies in regard to some of the retaliation allegations and that Slingerland has not pointed to sufficient evidence to defeat Defendant's motion for summary judgment on the retaliation claim.

#### A. Failure to Exhaust Administrative Remedies

Defendant argues that Slingerland has failed to exhaust her administrative remedies in regards to seven of the job openings that Slingerland allegedly applied for and was rejected. A federal employee is barred from bringing a Title VII claim

unless she "exhaust[s] the administrative remedies available to [her] in a timely fashion...." *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001). A federal employee must initiate an administrative complaint by contacting an Equal Employment Opportunity ("EEO") counselor "within 45 days of the date of the questioned incident." *Bohac v. West*, 85 F.3d 306, 309 (7th Cir. 1996); *see also* 29 C.F.R. § 1614.105(a)(1)(stating that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action").

Defendant contends that Slingerland failed to contact an EEO counselor within the required 45-day period in regards to the following seven open positions (collectively referred to as "Seven Open Positions") listed in the complaint: Publication System Specialist (VA No. 9650381), Building Management Specialist (VA No. 9650721), Contract Administrator (VA No. 96509124), Realty Specialist (VA No. 9851401), Program Specialist (VA No. 9851201), Project Manager (VA No. 9861151), Program Manager (VA No. 0450621 and 0450642).

Slingerland does not dispute Defendant's contention that in regard to the Seven Open Positions, Slingerland failed to contact an EEO counselor within the 45-day periods. Slingerland argues that Defendant "engaged in a pattern of discrimination and retaliation" that constituted a "serial violation of Slingerland's rights" and that the Seven Open Positions should be considered under the continuing violation doctrine. Under the continuing violation doctrine, a plaintiff is permitted to base a claim, such as a hostile work environment claim, upon a "'consideration of the

entire scope of [the claim], including behavior alleged outside the statutory time period, . . . for the purpose of assessing liability, so long as an act contributing to that [claim] takes place within the statutory time period. . . .'" *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004)(quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002)). However, the continuing violation doctrine does not enable a plaintiff to base a Title VII claim upon "'discrete acts of discrimination or retaliation that occur outside the statutory time period. . . .'" *Id.*; *see also Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005)(stating in regards to 300-day filing requirement that "employment actions such as termination, failure to promote, denial of a transfer, or refusal to hire are deemed to have been taken on the date they occurred, even if they form part of an ongoing practice or are connected with other acts").

The Seventh Circuit has made it clear that the continuing violation doctrine does not apply to "'discrete' discriminatory acts," and will only be applicable to "acts contributing to" claims such as a hostile work environment claim. *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 723 -724 (7th Cir. 2004)(stating that "[w]ith respect to the first category-'discrete' acts-each act 'starts a new clock for filing charges,' and the clock starts on the date that the act 'occurred'" and that "[a]ny discrete discriminatory acts that fall outside the statute of limitations are time-barred even though they may relate to other discrete acts that fall within the statute of limitations")(quoting in part *Nat'l R.R. Passenger Corp.*, 536 U.S. 101); *see also Stepney v. Naperville School Dist., 203*, 392 F.3d 236, 240 (7th Cir. 2004)(stating

that a plaintiff must comply with statute of limitations rule before bringing a federal action and that "[t]he continuing violation doctrine does not provide an avenue for circumventing this rule" and that "[t]he doctrine applies to claims like sexual harassment, where an individual act cannot be made the subject of a lawsuit when it occurs because 'its character as a violation did not become clear until it was repeated during the limitations period'")(quoting *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir.1997)).

Discrete acts are defined as acts that "'are easy to identify' because 'each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.'" *Lucas*, 367 F.3d at 724 (quoting in part *Nat'l R.R. Passenger Corp.*, 536 U.S. 101). On the other hand, the misconduct involved in claims such as a hostile work environment claim "involves repeated conduct that 'may not be actionable on its own, . . . [and] [s]uch claims are based on the cumulative effect of individual acts.'" *Id.*

In the instant action, the character of the evidence in the record indicates that the continuing violations doctrine does not save Slingerland's claims concerning the Seven Open Positions. Each time Slingerland was not given one of the Seven Open Positions, the decision by Defendant was a discrete and potentially actionable event. Thus, the 45-day limitation period properly ran after the decision for each of the Seven Open Positions. It was not the commutative effect of all the denials that potentially violated Title VII and it should have been possible for Slingerland to identify the potential violations of her rights after each denial. In addition, other than

the conclusory statement by Slingerland that there was a "pattern of discrimination and retaliation," Slingerland fails to offer any explanation as to why the continuing violation doctrine would apply to the allegations concerning the Seven Open Positions. (Ans. 2). Slingerland fails, for example, to offer any explanation why she should not have reasonably realized after each denial of a promotion within the 45-day period that she was possibly subjected to discrimination and/or retaliation. The limited evidence that Slingerland does mention in other portions of her answer indicates that Slingerland should have been aware after each of the decisions concerning the Seven Open Positions that Slingerland was possibly being discriminated against and/or being retaliated against. For example, Slingerland states that she filed the EEO Complaint in November 2002, contending that she was being discriminated against because of her gender and thus the evidence shows that Slingerland believed at that point that there was already an animus against her by her supervisors. After Slingerland filed the EEO Complaint and was denied promotions, Slingerland should have been aware of the possibility that the denials could be related to the EEO Complaint and Slingerland should have acted within the 45-day period provided for her and at least contacted an EEO counselor to discuss the matter. However, Slingerland admittedly failed to do so and she cannot now seek to resurrect such untimely allegations. Slingerland has failed to offer any detailed argument concerning why the continuing violation doctrine should apply to the Seven Open Positions and the evidence that is pointed to by Slingerland indicates that the continuing violation doctrine is not applicable. We also note that Slingerland

has not shown that the doctrine of equitable tolling would make her allegations concerning the Seven Open Positions timely. *See Beamon*, 411 F.3d at 860 (stating in regards to equitable tolling that "[u]nder this circuit's case law, a plaintiff awakens to the possibility of a Title VII claim far sooner than he achieves any level of certainty that his rights have been violated" and that "[t]he qualification 'possible' is important" because "[i]f a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run-for even after judgment, there is no certainty")(quoting in part *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990))(emphasis in original). Therefore, we conclude that the retaliation claim is time-barred to the extent that it is based upon any of the Seven Open Positions.

### B. Evidence Concerning Retaliation Claim

Defendant also argues that Slingerland has not pointed to sufficient evidence to defeat Defendant's motion for summary judgment on the retaliation claim. For a Title VII retaliation claim, a plaintiff can proceed under the direct or indirect method of proof. *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 740 (7th Cir. 2006). Under the direct method of proof a plaintiff can establish a *prima facie* case of retaliation by presenting direct evidence that shows that retaliation occurred. *Id.*; *see also Walker v. Bd. of Regents of Univ. of Wis.*, 410 F.3d 387, 394 (7th Cir. 2005)(stating that a plaintiff can present circumstantial evidence under the direct

method of proof that shows a "convincing mosaic of discrimination against the plaintiff"). Under the indirect method of proof, a plaintiff can establish a *prima facie* case of retaliation by showing that: "'1) after lodging a complaint about discrimination, 2) only [she], and not any otherwise similarly situated employees who did not complain, was 3) subjected to an adverse employment action even though 4)[she] was performing her job in a satisfactory manner.'" *Sublett*, 463 F.3d at 740 (quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003)). If a plaintiff establishes a *prima facie* case under the indirect method of proof, the defendant employer must present a legitimate non-discriminatory reason for the adverse employment action and if the employer does so, the burden shifts to the plaintiff to show that the given reason was a pretext. *Sublett*, 463 F.3d at 740. Slingerland argues that she can proceed under the indirect method of proof. (Ans. 6-7). Defendant argues that Slingerland cannot meet the similarly situated element of the *prima facie* case and cannot establish that Defendant's reason for its action was a pretext.

### 1. Similarly Situated Employee Element

Defendant argues that Slingerland has not pointed to sufficient evidence that shows that similarly situated employees were treated more favorably. For the similarly situated employees element on a retaliation claim, a plaintiff must show that "a similarly situated employee who had not engaged in statutorily protected

activity was treated more favorably." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006). In regard to the similarly situated employees element of the *prima facie* case, Slingerland merely states generally that she has met her burden for the element. (Ans. 8). Slingerland does not point to any evidence that shows that other employees were similarly situated such as the work duties or qualifications of other employees, and Slingerland fails to point to evidence that shows that such employees did not file an EEO complaint, and yet were chosen for the open positions. (Ans.8). *See id.* (quoting *Snipes v. Ill. Dep't. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002) for the proposition that "the *prima facie* case requires a plaintiff to 'show that he is similarly situated with respect to performance, qualifications and conduct, . . . and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them'"); *Burks v. Wisc. Dep't. of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)(stating that "[i]n order for an individual to be similarly situated to the plaintiff, the plaintiff must show that the individual is 'directly comparable to her in all material respects'" and that "[f]actors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications")(quoting in part *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)).

Not only has Slingerland failed to show that another employee is similarly situated, Slingerland has failed to specifically identify in her answer to the motion for

10

summary judgment any similarly situated employees that did not complain to an EEO counselor and were promoted. (Ans. 6-10). Slingerland must point to evidence concerning similarly situated employees outside the protected class and cannot satisfy the similarly situated employees element by making a conclusory statement about the element. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002)(stating that if "a plaintiff has failed to identify a similarly situated co-worker outside of her protected class, or [show] that the co-worker identified by the plaintiff, while similarly situated, was not treated in a more favorable manner," the plaintiff's "failure to offer such 'comparables' dooms her Title VII . . . claims"). Thus, Slingerland has failed to point to sufficient evidence to satisfy the similarly situated employees element.

### 2. Pretext for Retaliation

Defendant argues that it did not place Slingerland in the open positions in question because other employees were better choices for the positions due to their work experience, training, and prior work performance. Defendant also points to evidence that shows that one of the positions mentioned in the complaint was never filled due to a staffing reorganization. Defendant contends that there is not sufficient evidence that shows that Defendant's given reason was a pretext for retaliation. In determining whether a reason was a pretext, the proper inquiry is whether the given reason was a "lie," meaning "whether the employer's reasons for its decision are

11

honest and genuinely motivated." *Burks*, 464 F.3d at 754 (stating that the court should not consider whether "the employer's actions were 'mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons'")(quoting *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000)).

In the instant action, Slingerland states in a conclusory fashion that "[t]he evidence clearly shows that the reasons given [by her supervisors] for selecting applicants over Slingerland [were] a pretext for retaliation" and that she "has met her pretext burden. . . ." (Ans. 11, 14). However, Slingerland fails to specifically identify what "evidence" she believes "clearly shows" that Defendant's reason is a pretext, and for the purposes of addressing the instant motion we cannot speculate as to the bases for Slingerland's unsubstantiated statements. Slingerland also argues that "[t]he evidence" that shows that "Defendant's explanations are unworthy of belief" includes the evidence that "Plaintiff was more qualified than other employees selected." (Ans. 12). However, Slingerland fails to follow up her statements with any specific references to the evidence in this action that show, for example, that she was more qualified. Although Slingerland apparently believes that Defendant used poor judgment in selecting other candidates instead of Slingerland, such an act by Defendant does not constitute a pretext. Defendant also points to undisputed evidence that shows that the thirteen open positions mentioned in the complaint did not involve the same decision makers, which makes it even less likely that the given reason by Defendant was a pretext. In order for Slingerland's theory of retaliation to be meritorious, it would require a grand conspiracy among multiple supervisors that

are intent upon retaliating against Slingerland. *See Konowitz v. Schnadig Corp.* 965 F.2d 230, 234 (7th Cir. 1992)(stating that the Seventh Circuit "has typically been skeptical of such elaborate plot theories"). There is insufficient evidence that would show that Defendant held an animus against Slingerland because she filed the EEO Complaint and there is insufficient evidence that shows that Defendant's given reason was a pretext for discrimination. Therefore, based on the above, we grant Defendant's motion for summary judgment on the retaliation claim (Count I).

II. Hostile Work Environment Claim (Count II)

Defendant argues that Slingerland cannot pursue a hostile work environment claim because it was not included in the charge that Slingerland filed with the Equal Opportunity Employment Commission on December 22, 2005 ("EEOC Charge"). Defendant also argues that there is not sufficient evidence that shows that Slingerland was subjected to a hostile work environment.

A. Scope of EEOC Charge

Defendant argues that Slingerland failed to mention the alleged harassment in the EEOC Charge. Before bringing a Title VII suit in federal court, a plaintiff must first file a timely charge with the Equal Employment Opportunity Commission ("EEOC") "encompassing the acts complained of" in the federal court complaint. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985). Only claims that are "like or reasonably related to the allegations of the charge and growing out of such

allegations" may be included in the federal court complaint. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976)(internal quotations and citations omitted). A claim in a federal court complaint is "like or reasonably related" to an EEOC charge if there is a "factual relationship between" the two, *Cheek v. Western & Southern Life Ins.*, 31 F.3d 497, 501 (7th Cir. 1994), and an EEOC investigation into the charge would likely reveal the claim made in the federal court complaint. *Id.* at 500. For a factual relationship to exist between the claim in the federal court complaint and an EEOC charge, the claims "must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 501 (emphasis in original).

Slingerland states in the EEOC Charge: "I have been repeatedly passed over for promotions since filing a prior complaint." (12/22/05 Charge). The only relief requested in the charge is that Slingerland be given the "next available GS-13 position w/ back pay, compensatory damages." (12/22/05 Charge). There is no mention in the EEOC Charge of any harassment or any facts that would even suggest that Slingerland was being harassed at work. The alleged harassment mentioned in the complaint does not involve the same conduct relating to the denial of promotions. Any investigation into the EEOC Charge concerning the denial of promotions would center around an analysis of the qualifications of the job applicants and the personnel decisions. There is no reason to conclude that the claims of harassment now being brought by Slingerland would come to light during such an investigation.

Slingerland argues that the court cannot penalize her simply because she failed

to check a box on the EEOC Charge to indicate that she was bringing her charge based upon sexual harassment. However, we have not merely considered that omission on the EEOC Charge. Rather, based upon Slingerland's own handwritten description of the alleged discrimination and the relief sought on the EEOC Charge, it is apparent that the hostile work environment claim included in the complaint is not reasonably related to the EEOC Charge and Slingerland cannot pursue her hostile work environment claim in the instant action.

### B. Evidence of a Hostile Work Environment

Defendant also argues that even if the hostile work environment claim was reasonably related to the EEOC Charge, Slingerland has failed to point to sufficient evidence that shows that Slingerland was subjected to a hostile work environment. Title VII prohibits an employer from "requiring employees to work in a discriminatory hostile or abusive environment." *Velez v. City of Chicago*, 442 F.3d 1043, 1047 (7th Cir. 2006). In order to defeat a defendant's motion for summary judgment on a hostile work environment claim, a plaintiff must show that: "'(1) [s]he was subjected to unwelcome harassment, (2) the harassment was based on h[er] [protected characteristic], (3) the harassment was severe and pervasive enough to alter the conditions of h[er] environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability." ' *Id.* (quoting *Beamon*, 411 F.3d at 863). In the instant action, Slingerland fails to point to evidence that shows that she suffered any harassment at work, much less harassment that was so

15

severe that it altered the conditions of her work environment. The complaint is devoid even of any specific facts concerning the alleged harassment. The only argument presented by Slingerland in her answer to the instant motion is that the failure to promote Slingerland should be deemed a "severe and pervasive pattern of reprisal and harassment from her supervisors and reviewing officers." (Ans. 2). Slingerland argues that "[t]his harassing behavior of being 'passed over' was both subjectively offensive to Slingerland and was so frequent and pervasive throughout the years that a reasonable person would find the behavior hostile, abusive and, if Slingerland had resigned, constructive termination." (Ans. 2). We do not agree that the mere fact that Defendant did not choose Slingerland for open positions shows that Defendant's actions constituted harassment toward Slingerland. A hostile work environment is defined as a work environment that is "'permeated with discriminatory intimidation, ridicule and insult.'" *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004)(quoting *Shanoff v. Ill. Dep't. of Human Servs.*, 258 F.3d 696, 704 (7th Cir. 2001)). Slingerland does not allege any facts or point to any evidence that the personnel decisions concerning the open positions in question were accompanied by any threatening, embarrassing, or offensive conduct that would give rise to a hostile work environment claim and Slingerland's mere displeasure at not being promoted is not sufficient to create a hostile work environment. Therefore, based on the above, we grant Defendant's motion for summary judgment on the hostile work environment claim (Count II).

## CONCLUSION

Based on the foregoing analysis, we grant Defendant's motion for summary judgment in its entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 18, 2006